**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MITKO TODOROV,

      Petitioner,

                         CASE NO. 2:06-CV-10921

v.                      HONORABLE VICTORIA A. ROBERTS
                         UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS**

Mitko Todorov, ("Petitioner"), presently on parole supervision with the Michigan Department of Corrections through the Detroit Metro Parole Office in Detroit, Michigan seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for breaking and entering, M.C.L.A. 750.110; resisting and obstructing a police officer, M.C.L.A. 750.81d(1); and receiving and concealing stolen property over $ 200 but less than $ 1000, M.C.L.A. 750.535(4)(a). For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

## I.  Background

Petitioner was convicted of the above offenses following a jury trial in the Charlevoix County Circuit Court.  The case arose from the breaking and entering of the Ingalls Country Store in Charlevoix County, Michigan on August 10, 2003.

Justin Ingalls was washing dishes in the family house behind the store when he heard a noise on the store's security system.  When Ingalls looked at the security monitor,

1

he observed a person behind the store's counter.  Ingalls activated the recording device on the security system and called the police.

Officer Kevin Spate responded to the store and discovered Petitioner outside of the store underneath a blue tarp while going through something.  Officer Spate yelled "Police officer.  Let me see your hands."  Petitioner took off running.  Officer Spate chased after Petitioner, tackling him to the ground.  As the two men struggled, Petitioner told Officer Spate that he worked at the store and could not understand why the officer was doing this.  Petitioner continued to fight, forcing Officer Spate to use pepper spray to attempt to restrain him.  Other officers soon arrived to assist with the arrest.

Officer George Lasater patted down Petitioner at the scene, discovering a large amount of cash, a small pocketknife, a key to a Chrysler vehicle, some handwritten notes, and a wallet.  One of the handwritten notes taken from Petitioner had the words "Pepsi and Coke machines" written on it.  A store employee, Newton Sage, identified this as a note that he had written regarding money that he had removed from the soda pop machines at the store.  Another note taken from Petitioner stated "Barry Moyer, PD on his four dollar late fee for his movie."  This latter note was connected to four one dollar bills.  Carrie Ingalls identified this as a note that she had written to a store customer in regards to the payment of a late fee.

Other police officers discovered a 1992 Dodge Spirit parked about 530 feet from the Ingalls store.  Tak Sai Lau from New Baltimore, Michigan identified this vehicle as his company car, which was stolen in June or July of 2003.  Lau did not know Petitioner.

2

However, the Saturday before trial, Lau received a letter from Petitioner which stated:

> "Lau. I am your friend. I buy car that belongs to you. I did not know you
> are the owner. I am sorry. I will give you one thousand dollars for QT if
> you excuse me. I was living in Harrison Township. I know Vietnam
> people. I come up to fish when I was arrested by this cowboys. It's the
> best deal for both of us. Thank you, Lau from Mitko and see you.

Officer Lasater testified that following Petitioner's arrest, he "read him [Petitioner]

his *Miranda* rights and attempted to get a yes or no answer to whether or not he would

answer questions and he would not give me a yes or no answer. He was evasive in that-in

answering me that so I did not question him there." Officer Lasater, however, testified

that Petitioner spontaneously indicated that he worked at the store, was on his way home,

and was trying to find a place to use the restroom.

Trooper John Ferguson subsequently questioned Petitioner at the Charlevoix

County Jail. Petitioner told Ferguson that he had purchased the 1992 Dodge Spirit from a

charity organization for $ 700.00, and that he obtained the license plate from a friend.

Trooper Ferguson testified that the vehicle had improper plates and the vehicle

identification number (VIN) had been removed from the door. Trooper Ferguson testified

that the Blue Book value for the car was $ 2, 075.00.

Petitioner testified that he was returning from a casino when he stopped at what he

thought was a gas station to purchase a drink. As he approached the door, a man in dark

clothing came out from the bushes and attacked Petitioner, screaming that he was going

to slit Petitioner's throat. Petitioner identified Officer Spate as being this man. Petitioner

stated that Spate knocked him to the ground twice and eventually used pepper spray

3

against Petitioner.  Petitioner denied struggling with or hitting the officer.  Petitioner

claimed that the notes from the store were planted on him.  Petitioner denied breaking

into the store.  Petitioner testified that he bought the car for $ 750.00 from a friend who

told him that the car had been donated from a charity.  Petitioner denied telling the police

that he worked at the store or that he had stopped for a drink, but admitted telling the

police that he needed to use the bathroom.

Petitioner's conviction was affirmed on appeal. *People v. Todorov,* 253945

(Mich.Ct.App. August 16, 2005); *lv. den.* 474 Mich. 982, 707 N.W.2d 206 (2005).

Petitioner now seeks the issuance of a writ of habeas corpus on the following ground:

> Petitioner was denied his Constitutional rights to due process, where the
> prosecutor elicited evidence of post-arrest silence; Petitioner was also denied
> his state and federal right to the effective assistance of counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

> (1)      resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
> (2)      resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the

4

state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

Petitioner contends that the prosecutor violated his constitutional rights by eliciting evidence of Petitioner's post-arrest, post-*Miranda* silence in the case-in-chief and during the closing argument. Petitioner further claims that his trial counsel was ineffective for failing to object to the prosecutor's references to Petitioner's post-arrest silence.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *See also Gravley v. Mills*, 87 F. 3d 779, 786 (6th Cir. 1996).

Petitioner's primary claim is that the prosecutor elicited evidence of Petitioner's post-*Miranda* silence when Officer Lasater testified that Petitioner was evasive and would not give him a yes or no answer as to whether or not he would agree to answer

5

any questions.

As an initial matter, a criminal suspect's refusal to participate in an interview with the police, without more, does not equate to the assertion or reassertion of the Fifth Amendment right to silence. *See Burton v. Bock,* 187 Fed. Appx. 465, 471 (6th Cir. 2006)(*citing United States v. Pitre*, 960 F. 2d 1112, 1125-26 (2nd Cir. 1992)).  In this case, Officer Lasater merely testified that he attempted to ascertain from Petitioner whether or not he wished to answer questions.  An attempt by the police to clarify whether a suspect wishes to remain silent "does not run afoul of the Miranda right to remain silent." *See United States v. Muhammad,* 196 Fed. Appx. 882, 886 (11th Cir. 2006); *cert. den.* 127 S.Ct. 1315 (2007).  In this case, Petitioner's refusal to answer Officer Lasater's question about whether or not he wished to answer questions or exercise his Fifth Amendment rights cannot be deemed an assertion by Petitioner of his Fifth Amendment right to remain silent.

Moreover, a single mention of a criminal defendant's post-arrest silence does not violate the defendant's due process rights when the prosecution does not specifically and expressly attempt to use the silence to impeach the defendant. *See U.S. v. Stubbs,* 944 F. 2d 828, 835 (11th Cir. 1991).  The Supreme Court's holding in *Doyle* "has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the Miranda warnings." *United States v. Crowder,* 719 F. 2d 166, 172 (6th Cir. 1983).  Although the prosecutor elicited testimony from Officer Lasater that Petitioner refused to answer any questions, these comments did

6

not violate Petitioner's due process rights because they were made in the context of Officer Lasater's narrative regarding Petitioner's arrest and were not used to impeach Petitioner's credibility. *See Noland v. French,* 134 F. 3d 208, 216 (4th Cir. 1998). Indeed, after mentioning that Petitioner refused to answer any questions, Officer Lasater testified that Petitioner spontaneously told him that he worked at the store and had stopped there on the way home to use the bathroom.  Officer Lasater's brief reference to Petitioner's post-arrest failure to respond to questions did not violate Petitioner's due process rights, in light of the fact that the prosecutor made no specific inquiry about Petitioner's post-arrest silence, the comment was made in the context of Petitioner's subsequent statements to the police, and the testimony focused on what Petitioner said, as opposed to what he did not say. *See U.S. v. Cayasso,* 130 Fed. Appx. 371, 375 (11th Cir. 2005).  Because the prosecutor made no specific inquiry about Petitioner's post-arrest silence and never mentioned it again in his closing argument, there was no *Doyle* violation. *Stubbs,* 944 F. 2d at 835.

    Moreover, assuming that Officer Lasater's testimony was an improper reference to Petitioner's post-arrest silence, any such error was harmless in light of the overwhelming evidence against Petitioner.  Where a state court finds no error, as was the case here, the proper harmless error standard for a federal habeas court is to determine whether the whether an error had a "substantial and injurious effect on the jury's verdict." *See Eddleman v. McKee,* 471 F. 3d 576, 583, n. 3, 585 (6th Cir. 2006)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A violation of *Doyle* can be harmless

7

error. *See Hayton v. Egeler,* 555 F. 2d 599, 603-04 (6th Cir. 1977).  In light of the strong evidence against Petitioner in this case, any reference by Officer Lasater to his post-arrest silence was harmless error at best, in that it did not have a substantial or injurious effect on the jury's verdict.

Petitioner further claims that the prosecutor improperly commented on his post-arrest silence during his closing argument, when he made the following remarks:

> "You will recall Mr. Todorov saying he went to the store and he was going to go there to buy something and Officer Spate jumped out of the bushes and attacked him and threatened to slit his throat.  Now if that's true, why wouldn't he ask for help when the other officers arrived?  Why wouldn't he say, 'This man attacked me.  Help me'?  He doesn't say any of those things.  Instead, he continues to say that he's just there to use the bathroom or he works there.  That's not what he testified to yesterday."

The Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no *Miranda* warnings are given. *Brecht,* 507 U.S. at 628.  Such silence is probative and does not rest upon any implied assurance by law enforcement authorities that it will carry no penalty. *Id.*

In *Brecht,* the U.S. Supreme Court held that where a defendant claimed that a shooting was an accident for the first time when he took the stand at trial, it was proper and probative for the state to impeach his testimony by pointing out that defendant had failed to tell anyone before the time that he received his *Miranda* warnings about the shooting being an accident. *Id.* 507 U.S. at 628.  Likewise, it was proper in this case for the prosecutor to impeach Petitioner's defense by commenting about Petitioner's failure to inform the police, prior to the time that he received his *Miranda* warnings, that he had

8

been attacked by Officer Spate.

To the extent that the prosecutor's comments could be construed as a comment on Petitioner's failure to advise officers after being advised of his *Miranda* rights that he had been attacked by Officer Spate, these comments were also permissible. The Supreme Court's holding in *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Although each of two inconsistent statements may be said to involve silence insofar as it omits facts included in the other version, *Doyle* does not require any such formalistic understanding of silence. *Id.* at 447 U.S. at 409.

The Supreme Court's holding in *Doyle* is inapplicable to this case because Petitioner made statements to both Officer Lasater and Trooper Ferguson after being given his *Miranda* warnings. Petitioner never told either officer that he had been attacked by Officer Lasater. The prosecutor's comments about Petitioner's failure to mention this attack to either officer was not an improper reference to Petitioner's right to remain silent, but was instead proper under *Anderson v. Charles, supra,* to impeach Petitioner's inconsistent testimony. *See Dye v. Hofbauer,* 197 Fed. Appx. 378, 386 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief on his claim.

The Court will likewise reject Petitioner's related ineffective assistance of counsel

9

claim.  To prevail on his ineffective assistance of counsel claims, Petitioner must show

that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See*

*Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  *Strickland* established a

two-prong test for claims of ineffective assistance of counsel: the petitioner must show

(1) that counsel's performance was deficient, and (2) that the deficient performance

prejudiced the defense. *Strickland,* 466 U.S. at 687.

Because the prosecutor's questions and comments regarding Petitioner's post-

arrest silence were not improper, counsel's failure to object to references to Petitioner's

post-arrest silence was not ineffective assistance of counsel. *See Solomon v. Kemp*, 735

F. 2d 395, 403 (11th Cir. 1984).  Moreover, even if the prosecutor's questions and

comments were an improper reference to Petitioner's post-arrest silence, counsel's

failure to object did not prejudice Petitioner, so as to support his ineffective assistance of

counsel claim, in light of the overwhelming evidence against Petitioner. *See Lovett v.*

*Foltz,* 687 F. Supp. 1126, 1144-45 (E.D. Mich. 1988).  The Michigan Court of Appeals'

rejection of Petitioner's ineffective assistance of counsel claim was therefore not an

unreasonable application of *Strickland,* so as to entitle him to habeas relief. *See Siebert v.*

*Jackson*, 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also

deny a certificate of appealability to Petitioner.  In order to obtain a certificate of

appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court will deny Petitioner a Certificate of Appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of Petitioner's claim to be debatable or that he should receive encouragement to proceed further. *Siebert,* 205 F. Supp. 2d at 735.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a

11

court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claim, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.   ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 25, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on April 25, 2007.

S/Carol A. Pinegar
Deputy Clerk

12